Our final case for argument is 24-1861, Bryan v. Collins. Mr. Levinson? Please come on up and proceed. You don't need to sit next to him. There's been space here for me, but that's okay. Good morning, ladies and gentlemen. I'm Jared Levinson, attorney for the appellant in this case, Patrick Frank Bryan. I'm a Marine Corps veteran. We're here this morning on a writ of mandamus. There's a three-part test, as the court knows, for issuing a writ. The first part is that we have to show that there's no other means of obtaining relief. There's a clear and undisputable right to the writ, and the writ has to be appropriate under the circumstances. The problem in this case, complicated as it all is, is that this case has been going on for one thing for 17 years in its present form. The other problem here is that throughout all of the proceedings in this case, through all of the hearings that we've had, four BVA hearings, RO consideration, DROC consideration, the government has managed on every major issue in this case to ignore all, and I underline the word all, positive evidence in favor of Mr. Bryan. Well, counsel, here's the part that kind of confuses me about your mandamus. You know, we're not unaccustomed, and nor are we unsympathetic to the idea that sometimes the VA, it does not act quickly, and that's a real problem. We've received mandamus petitions in the past, and what they've asked us to do is to give the VA a deadline, a date certain by which they've got to resolve this, get off your butt, resolve the case. That's what the mandamus asks us to do, but your mandamus is quite perplexing. You don't say, tell them to resolve this long overdue claim. You say, tell them we win. Well, that doesn't feel like mandamus to me. That's a very odd request. You want us to use mandamus to award you substantive merit, victory, as opposed to forcing the VA to get off its butt and act, and so I'm a little perplexed. Are you aware of cases where that's happened in the past? Because I'm not. Your Honor, we ask for multiple forms of relief. We also ask for an order to order the VA to follow the rule of law and to stop playing games with these claims and ignoring the overwhelming bulk of the evidence, including all of the evidence, and what does that evidence include? So we would welcome an order from this court to speed up this process or set a deadline of any kind after 17 years. We were here 10 years ago. So where is this claim in the VA process right now? Okay, Your Honor. As of the briefing, which is about a year old, it was in the board, right? That's correct, Your Honor. It had just been filed about six months or four months before. If I could, I'd like to take a moment to explain the context of these claims. I'm more interested in the specifics of the answers. The board has not acted, is that correct? Your Honor, this case has been back and forth between the board. According to the BVA, it has been sitting at the board for a long time now. It's been sitting there ever since it got there, and some of these claims have been sitting there longer. We're talking about the dental claims, right? We're talking about the dental claims. Okay, I know you've got lots of other claims going on. No, we're talking about the dental claims. Okay, can you answer Judge Toronto's question? Has anything developed at the board? Nothing is being developed. They're just sitting on it. It's just sitting there. So it has not been decided before? No, it has not. Okay, thank you. The problem here is if you look at what they've done, they have ignored all the evidence of what happened. Mr. Bryan was aboard a ship at sea, the USS Guam. That ship was hit by an 85-foot rogue wave. He had been sent topside to seal the hatches. What year did this occur? 1975. The original claims were filed in 1978. When that occurred, when the ship was hit, Mr. Bryan fell forward while opening a hatch. The hatch door, 300 pounds, slammed his head. It caught his head between the hatch door and the sidewall of the hatch entrance. He was knocked unconscious for three days. There are medical records from the ship's log which show that he suffered facial damage and dental injuries that could not be repaired on the ship. He was helicoptered off the Guam to Quantico where he could get care. His head was completely bandaged. Counsel, I certainly do not want your client to think we do not, A, appreciate his service and, B, feel great sympathy for the injury he suffered while in that service. But you need to focus on the mandamus. You need to focus on whether, for example, the government says you can get, one of the factors is that you can't get relief anywhere else. The government says you can get relief somewhere else. And so we're an appellate court, so while we are absolutely sympathetic and tremendously appreciative, we need you to focus on the issue. That's what I'm trying to do, Your Honor. I'm trying to let you know that what happened here is all the evidence that they should have considered surrounding his injuries, medical reports from the ship, all the doctors' reports, all the neurologists' reports, all the dental reports, the C&P exam done by the chief dentist in Buffalo showing the extent that he has a little four-tooth fracture. In other words, Your Honor— But this is not an appeal of the merits. We don't have a decision on appeal. This is, Your Honor— Counsel, don't interrupt me. We do not have a decision on appeal to us on the merits. I understand, but— You're interrupting me again. You know what? You just go ahead. I'll stop asking questions. Go on. Your Honor, if I may, the problem here is that we cannot get resolution because the VA will not follow the most fundamental rule that they have. This is not just an appeal on the merits. The problem is, at every turn, they refuse to consider all relevant evidence. How do we get— Yeah, but let me interrupt you. We're—the BVA—the adjudication of your claim has not yet occurred. Your Honor— It's pending before the board. It will then be appealable to the CAVC. When litigants come up here and say they refused or they failed to consider this evidence, they're talking about what the board failed to do or what the CAVC failed to do. You haven't even gotten to that point in this case yet. Your Honor, the CAVC failed to consider all the evidence that we presented, that the government didn't consider any of the evidence in this case that was positive to the claim. This has been going on for 17 years. How do we get it resolved? How do we get an appeal if they keep remanding it back and forth for 17 years and in the process ignore it? And to give you a good example of what you're talking about, there are other issues in this case that are not before you. But if you'll indulge me for a moment, there are issues involving PTSD and TBI. Now, let me explain to you what the VA did here. Well, let me just, as a threshold matter, those are the subject of other claims that you have in adjudication that are separate and distinct from this claim. I'm very aware of that, Your Honor. But it's typical of the process that they've engaged in to review these claims. They've gotten the same kind of review both ways. And what I'm trying to say to you is there's a persistent pattern of misconduct here that cannot be ignored by the court. How do you get due process if there is no due process? If the government at every turn ignores its most highest duty, what does the VA law require? What did Justice Thomas say in the most recent decision on the standard of evidence in this case? He said the VA has a duty to weigh all relevant evidence, and then they have a duty to weigh that evidence in juxtaposition to each other. How do you get that evidence weighed by anybody if none of that evidence is ever reviewed or mentioned or even analyzed by the VA, by the BVA, and if they ignore the record? And if they go out of their way to keep that evidence from coming before it could be even becoming part of the record of the case? Have you made those arguments in your pending case before the BVA? Your Honor, the BVA doesn't care. The BVA— Can you answer my question? Have you made those— We have made those arguments throughout this case, Your Honor. We've been making those—I submitted a 60-page brief to the BVA at one point on all of these issues, giving them all of that evidence. That's the point. At what point does the government have a duty to review evidence? How can they ignore all of the evidence in a case? We are never going to see resolution because they keep playing games, dancing around the truth at every turn. So what is it you're asking us to do? We're asking you to set a deadline— Can I finish the question? You answered, Judge Moore, I think, that you're not necessarily only seeking, give me all my damages. That's correct. So you want us to issue an order telling the BVA that they have to consider all the evidence? Yes. Consider all the evidence and issue it perhaps a deadline, six months, whatever it may be that's reasonable, to put an end to this so we can get to the CAVC. After 17 years— Counsel, one of the things the government argues is that in cases where we've issued deadlines, there are what are called the track factors that have to be weighed and addressed, and that you didn't raise those, and you've therefore waived that form of relief. We did raise those in our letter of appeal to that body, which they denied, and they said that we didn't meet the track factors. There's a second opinion there from the court. But moreover, we do meet the track factors, Your Honor. First of all, the rule of reason is the first factor in the track analysis. The rule of reason here is that you would consider all of the evidence, all of it, all the relevant evidence, just like the law requires, just like Justice Thomas said. They have to weigh it, and then they have to make a decision. But how are they going to weigh the evidence if they ignore it? And the reason I raise that— But has the BVA—I mean, the current appeal before the BVA, are you assuming that they're going to ignore it? They've already done that in another aspect of the case. They ignored a C&P exam written by the most qualified doctor in the PTSD and TBI issues. They found a reason to toss it aside, creating facts that weren't even in the record. So have you appealed— Yes, we have. Here's what happened. This is why I'm concerned about this. We went to this. I'm sorry to be so perhaps forward about this. But, look, here's what they've done. The case went to the CAVC. The government then conceded that they made a mistake in not reviewing that report and said that they would correct it. So the court remanded it, and the government even put this in their brief. When the case was remanded, it went to the DROC, and they issued a decision earlier this year. You know what wasn't mentioned at all in that decision? That all the evidence, including the C&P report, that they were supposed to review. What's DROC? The Decision Review Operations Center. They handle a lot of the remands that come down from the court. I even spoke to the director of the DROC, and he assured me they would review it. If you look at the evidence that's cited in that DROC, there's no mention of that report. And who wrote the report? A doctor, a psychologist, who has 10 years' experience as an Army psychologist, trained at the Eisenhower Medical Center in TBI and PTSD issues. That report was ignored like it never happened.  Is that report in connection with the dental claims? No, it's in regards to the other. So what you've just told us for the past two or three minutes isn't relevant to the case? It is relevant to the overall behavior of the agency in relation to this case, and they've done the same thing in this case. They've ignored all the positive evidence. How can an agency, in reviewing a case, ignore all of the evidence? I've never heard of a case like that. Their number one duty is to review all of the evidence and weigh it in juxtaposition to each other. Justice Thomas reaffirmed that fact in his latest decision regarding the standard of proof for VA claims. Counselor, you've used up all your rebuttal time. Do you want to save any of it? Yes, I'll save the rest of my rebuttal time. Thank you. Good morning, Your Honors. May it please the Court? Catherine Yang from the Department of Justice. The issue before the Court is straightforward, whether the Court of Veterans Claims erred when it denied Mr. Bryant's mending this petition. That is a narrow question, and the answer is equally straightforward. The Veterans Court acted within its discretion, and this Court should affirm. I'll start with the most obvious piece, which is that Mr. Bryant's petition and during the argument today— I just want to focus on the dental claims, and I know he crossed over between other claims he has pending. But what about his assertion that this case has been around for 12 to 16 years or whatever? Is that accurate, and if so, does the VA need to explain the nature of that delay? Certainly, Your Honor. I heard a mention of 17 years for the life of the case. Your Honor, in our view, that's not the proper metric, because as this Court and Martin made very clear, for purposes of mandamus, what we do is we look at the particular agency action that has been alleged to be unreasonably delayed. There is no question— Just stop. Answer her question directly. Has this case been bouncing back and forth for 16 years? The merits of this case have been adjudicated over the period of those 17 years, but on various different issues, Your Honor. And so the procedural posture that's currently before the Court today is very different than the procedural posture that was before the Court in the last mandamus petition in 2015. So over the course of the life of this case, in fact, even just since the last argument in 2015, there have been three Board decisions. There have been more Board decisions on other claims that Mr. Bryant is pursuing. There's been a lot of substantive activity at the RO level. And so it's not the case that the VA has simply been sitting on this case for the last 17 years. Much to the contrary, there have been a number of decisions in that time. And the reason that we are before the Court today is because in 2021, Mr. Bryant was before the Board when he raised for the first time the argument that the VA's decision in 1979 was clear and unmistakable error. That was the first time he had made that motion. He made that motion initially before the Board. And the Board said, we don't have jurisdiction to review that in the first instance. The RO has to do that under this Court's decision in Andre v. Principi. And so it remanded. So the Q claims are now what's before the Board. And those claims were only filed, Your Honor, in 2021, I believe was the date. So it's simply not correct that the 17 years is the appropriate number to look at. More importantly, though, Your Honor, for purposes of the mandamus petition, I think there are a couple of factors to keep in mind. Number one is that as the Veterans Court made very clear, is that the petitioner bears the burden of showing unreasonable delay using the analysis under the track factors. I just want to focus on something you just said so I really understand it. The only claim, dental claim, that is at issue is a Q claim. And that was not filed until four years ago. Is that what you just said? So what's currently before the Board are two issues both pertaining to the dental claims under different diagnostic codes. And the issue for each of them is, number one, whether the dental code was – whether there was service connection established under the dental code, and relatedly whether the 1979 decision by the VA was Q. And the Q claim, to Your Honor's question, was not raised in detail. The non-Q claim was filed when? The non-Q claim, that has been at issue since the 2015 appeal that was lost before this court. But it has bounced back and forth for a number of different reasons that I'm happy to go into if that would be helpful. But that claim was filed for effective date purposes when? I'm not certain of the date of filing, but the import of it is that the effective date for the non-Q claim is not the entirety of the period that Mr. Bryant is asking for, which is why before the Board in 2021 he decided to file the Q motion, which would, if granted, give him an effective date all the way back to 1979, which is ultimately what he wants. For purposes of the mandamus petition that's before the court, I think there are a couple of important things to keep in mind. Number one is that the petitioner bears the burden, and the Veterans Court here found that the petitioner did not meet that burden. How long has this case been at the Board this time? What is the current action that we're waiting for from the Board? Yes, so the appeal has been pending for a little over two years. It was first docketed in August of 2023. Sometime in there, there were two FOIA requests made by Mr. Bryant's counsel that had to be addressed and were addressed. I believe earlier this year, I think, FOIA requests to the Board? FOIA requests to the VA pertaining to his dental claims, which then required, I think, the file being transferred between different entities within the VA. Just one second. You say it was docketed in August of 2023. My recollection is that sometimes things are filed and not docketed for extensive periods of time. I'm remembering this from Martin. I want to know, when was it filed with the Board? Do you have that information? When did he file an appeal? I have it in my notes that Mr. Bryant appealed in July of 2023. And the reason for that is because the Q decision by the regional office on his 2021 motion issued in March of 2023. So he appealed that. That appeal was filed in July 2023. The appeal was docketed in August of that same year. And the Board has not ruled in two years? The Board has not yet ruled. What has happened is that there were these two FOIA requests that needed to be addressed. My understanding is that Council also made an objection to the way that the appeal was unfolding. And so that also required a substantive response by the Board. My understanding is that a Board member was assigned to review this appeal earlier this year, around March or so, and that most recently, at the beginning of September, it was assigned for drafting of a decision. September of when? 2025. September. So in September of 2025, it was assigned to have an opinion drafted? I'm confused. I don't know this process. Yeah, so that's correct, that a staff attorney was assigned to assist the Board member with drafting the decision. So that drafting, that step comes after there's been whatever analysis or review of the record by whoever's assigned to the case? That's my understanding, yes. Now, let me ask you a question. I certainly know the track factors. I don't need you to tell me whose burden of anything is. But is there room within this analysis to take into account the fact that the litigation has been ongoing for so long? And what I mean by that is, while no individual delay, standing alone, might be awful, they seem long, and I'm bothered by it, but cumulatively, it's troubling. And so while you're standing here and saying, well, this one has only been pending since July of 2023, but his claims have been ongoing for 17 years related to this generally. Is there any room in the analysis for taking that into account? I think there is, Your Honor. And ultimately, it comes down to when we're considering a mandamus petition, the other two factors that are always going to bound that analysis are, number one, that mandamus does not turn on the mere passage of time. We know that from the Beasley decision by this court, where I believe the veteran there alleged a lengthy history of his case that spanned 14 years. But this court said there's an alternate remedy, and therefore, mandamus is not appropriate. So it doesn't turn merely on the passage of time. And number two, the context matters. And that's ultimately the gist of this court's decision in Martin. The context matters. You have to look at what is actually happening in the case, the reasons why things are happening in the case. And the reason that I brought up the Q issue is because what that demonstrates is that when Mr. Briden was appealing between 2013 and 2021, he was appealing something that he ultimately decided to change tack on in 2021 with the Q motion. So he brought- For purposes of our audience, just explain very briefly what Q is. Yes, Your Honor. So in the veteran system, there's a number of different ways to challenge a claim. But there are limited ways to challenge a claim that has become final. One of the ways, one of the limited ways to challenge a claim that has become final is to file what's called a Q motion, Q meaning clear and unmistakable error. And it's a high standard to meet. But it basically says that if you are able to meet the standard and demonstrate that the original VA decision that you're challenging was clearly and unmistakably factually, legally erroneous at the time that it was made, then you are entitled to basically undo the finality of that decision. And the importance, the relevance of that is that you get all of the back pay from the time of the original decision. That's exactly right. Otherwise, you just get a year before or whatever. That's exactly right. You get that entire history of benefits all the way back to the original decision that you are challenging. And so context matters, Your Honor, which was the gist of the court's decision in Martin. Mr. Counsel, in his opening argument, said, you know, we did raise the track factors before the Veterans Court. Your Honor, the petition before the Veterans Court is very clear. There's no mention of the track factors or any sort of analysis. Counsel said, well, I did it before the panel when I was requesting panel review. That doesn't work, Your Honors, because it is a well-established rule in the Veterans Court that you can – that the purpose of panel review is to see whether the single judge has prejudicially overlooked or misunderstood something. And by definition, the Veterans Court here, when it assessed the petition, could not have, by definition, overlooked something that Mr. Bryan never put before it in the first place. So ultimately what we have here is two things that the Veterans Court ruled on. Number one, the Veterans Court said that it was pretty clear to them that what Mr. Bryan was ultimately seeking was a merits outcome. And the Veterans Court held that mandamus cannot compel a merits outcome. That's very clear under this court's decisions in Wolfe and Beasley. And then to the extent that Mr. Bryan was seeking something other than merits relief, the Veterans Court said that he had not shown that he lacked an adequate alternate remedy. It talked about the various different ways that his claim is moving through the process. It talks about the ways that the VA is developing the claims, how the VA is making sure that Mr. Bryan and the RO are following the right procedures, and that when someone makes a mistake, they're rightly given the chance to correct it. That is an adequate alternate remedy, and because that is one of the key pieces of any mandamus petition, the Veterans Court found that because Mr. Bryan had failed to establish that, that he was not entitled to a right of mandamus. Counsel, you said a staff member has been assigned to help somebody at the board generate the opinion. In your experience, how long does it normally take before you see such an opinion? I wouldn't be able to speculate, Your Honor. I'm sorry. Months or years? I mean, I would say months, but I'm not in a position to be able to say definitively that a decision will issue within a certain amount of time. Okay. Well, how long do you think would be too long such that the track factor should be implicated? How much longer does he have to wait, Mr. Bryan, for a decision from the board? When do you think the track factors would justify him returning to court for mandamus for us to order the board to resolve the case? Your Honor, I don't have a specific timeline in mind for you, and the reason for that is that's not the role that either I play or that this court plays. Ultimately, the way that the track factors would have to be analyzed, if they had been argued and presented in the first instance to the Veterans Court, is that the Veterans Court would assess the factors and say whether there has been a rule of reason applied, whether there has been unreasonable delay, whether that delay, either individually or cumulatively, is so egregious as to warrant mandamus. And I guess that's what I'm trying to get from you, is what would the point at which you would agree the delay is so egregious that it warrants mandamus? I'd like to know the government's position. There has to be a time. There has to be a time at which, if the board does nothing, if he files nothing going forward and the board does nothing, at what point is he legitimately entitled to come back and seek mandamus relief? Your Honor, I apologize. I don't have a specific time, again, because the court in Martin was very clear that context matters. But you know the context. Assume as true all the facts in this case. You have all the context you need. You know these facts ten times better than I do. Again, Your Honor, context matters not just in the past but also going forward, right? Because if there's additional activity either before the board… I just said assume he files nothing else and he just sits back and waits for his decision. How long is too long? How long has he got to wait? Your Honor, I don't know. What I can say is that on average, appeals before the Board of Veterans' Appeals are resolving anywhere between a year and a half and I believe up to two and a half or three years. And so if we are within that window, I think that would be reasonable. If we go far beyond that window, then it depends on the context of the case. Of course… And that time period you gave is from the filing of the appeal to its resolution and of course the context matters, right? That's right. And so we're already pretty far along in that window, aren't we, Counsel? We are in that window. We are not beyond that window. No, but we're towards the tail end of that window at this point it looks like because if he filed in July of 2023, we're kind of coming… I hope there's a decision really soon. How about that? I hope so too, Your Honor. Is there anything you can do to help move that along? Can you pass a little message on to the Board? The Board is well aware of this appeal. Like I said, the Board is already in the middle of adjudicating this appeal. A staff attorney has been assigned to draft the decision. I don't have anything more specific beyond that, but it is certainly underway and ultimately… You represent the agency, correct? I represent the United States, yes. And the Board is part of that agency. That's correct. So go tell them to decide the case promptly. That's an order. No, I'm not joking. I will pass that along, Your Honor. I certainly will. And like I said, the Board is aware of its obligation to resolve these issues expeditiously within all the constraints of the system. But ultimately for purposes of mandamus, it's not for this Court to sit and apply the track factors in the first instance. And ultimately, with the record that's coming before this Court, it is ultimately whether the Veterans Court acted within its discretion when it denied the mandamus petition. Respectfully, you don't think we should apply the track factors in the first instance, but there have to be circumstances in which it has taken too long and too much has gone on, and as a matter of law, it's reasonable. We're not there yet, but I'm not positive that we can't apply the track factors in the first instance. I understand Your Honor's position on that. I respectfully disagree. I think that the Court's jurisdictional statute in 7292 makes it very clear that you have to review a final decision by the Veterans Court, and this Court's decision in moat indicates that if the Court finds an issue with the Veterans Court's application of the track factors, or lack thereof, as was the case in moat, that it's for the Veterans Court to apply the factors in the first instance. But for all these reasons, I see that my time is up, and so I will ask that the Court affirm the decision in moat. Thank you. Please, the Court. Counsel for the government has told you how they were handling the 913 issue in terms of the acute claim. I'd like to give you the history of that issue in honest accounting, not the cleansed version you've been getting. That 9913 rating was made about at the time that their brief was due in this Court 10 years ago, and they held it out to this Court as a show of good faith. When they got out of this Court, they proposed revoking that rating, saying it wasn't warranted. They said he had periodontal disease. They ignored, as I said earlier, all of the evidence concerning the accident, everything that's happened to him. He's had two major surgeries because of those injuries. What's significant is the process they used. They proposed revoking that rating, then they reaffirmed it after we objected. Then they proposed taking it away again, and then they issued a decision reaffirming it, and then they took it away again. That's the process we've been getting. That's the due process that they've been giving us. It makes no sense at all. It took them nine months to give us any explanation at all as to why they were revoking it. I had a direct communication with the director of the Baltimore regional office. They have done everything they can to ignore the rule of law. You cannot revoke a rating under law, reaffirm it, and then take it away without reproposing it. That's Q on its face, period. They have done nothing but violate the law at every turn. They could care less what the law says. They have no rational explanation for any of this. If they aren't stopped, they're going to keep doing it over and over again. Just like they came to this court and promised and held up that rating and then took it away, under the most bizarre circumstances I've ever seen, they're going to do it again and again until they're stopped. All right, counsel. Thank both counsel. Arguments taken under submission. Thank you.